UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

United States of America,

    *Plaintiff,*

v.

Eural Black,

    *Defendant.*

No. 05 CR 70-4

Judge Lindsay C. Jenkins

MEMORANDUM OPINION AND ORDER

Eural Black, a Chicago police officer, was convicted of conspiracy and firearms offenses in 2007. *United States v. Black*, 999 F.3d 1071, 1072 (7th Cir. 2021). He was sentenced to a total of 40 years in prison: 10 years for the conspiracy convictions, plus consecutive 5- and 25-year terms for carrying a firearm in furtherance of a crime of violence or drug trafficking crime. 18 U.S.C. § 924(c). He unsuccessfully sought relief from this sentence on direct appeal, in postconviction proceedings, and in a motion for a reduction of sentence under 18 U.S.C. § 3582(c)(1)(A).

Black now moves for a reduction of sentence again. [Dkt. 769.][1] He argues that although the Seventh Circuit has held that circumstances like his cannot constitute "extraordinary and compelling reasons" to reduce his sentence under § 3852(c)(1)(A), the U.S. Sentencing Commission's contrary interpretation of that statutory phrase abrogates those Seventh Circuit cases. A federal agency's interpretation of a statute can trump a court's earlier interpretation in some circumstances, but they are not present here. Seventh Circuit precedent requires the Court to deny Black's motion.

---

[1]     The motions for leave to file supplemental authority are granted. [Dkt. 777, 778, 779.]

## I.    Background

In 2007, a jury convicted Black of conspiracies to commit racketeering, drug distribution, and robbery, plus two counts of carrying a firearm in furtherance of a crime of violence or a drug trafficking crime, in violation of 18 U.S.C. § 924(c). *Black*, 999 F.3d at 1072. This Court[2] imposed the 10-year mandatory minimum on the conspiracy convictions and the then-applicable 5- and 25-year mandatory minimums on the § 924(c) convictions. *Id.* at 1072–73. As required by the statute, the § 924(c) sentences ran consecutively to the other sentences. *See* § 924(c)(1)(D)(ii). Black's convictions and 40-year sentence were upheld on appeal. *United States v. Haynes*, 582 F.3d 686, 697, 713 (7th Cir. 2009), *abrogated on other grounds by United States v. Vizcarra*, 668 F.3d 516, 521 (7th Cir. 2012). Black moved for postconviction relief under 28 U.S.C. § 2255, alleging ineffective assistance of counsel, but his motion was denied. *United States v. Black*, 2011 WL 6058584 (N.D. Ill. Dec. 6, 2011). He received permission to file a successive § 2255 motion to argue that his § 924(c) convictions were illegal under *Johnson v. United States*, 576 U.S. 591 (2015), but this Court denied his motion, *United States v. Black*, 2020 WL 1445606 (N.D. Ill. Mar. 25, 2020).[3]

In 2018, Congress enacted the First Step Act, which contains two provisions relevant to the present motion. An amendment to 18 U.S.C. § 3582(c)(1)(A), the

---

[2]    Judge Guzmán presided over all proceedings prior to Black's current motion.

[3]    *Johnson* held unconstitutionally vague a statute analogous to § 924(c)(3)(B), which provides one definition of "crime of violence" under § 924(c). *Johnson* had no impact on § 924(c) convictions predicated on drug trafficking crimes, however, and Black's convictions rested on both crimes of violence and drug trafficking crimes, so *Johnson* did not call their validity into question. *See United States v. States*, 72 F.4th 778, 782 & n.1 (7th Cir. 2023).

2

compassionate release statute,[4] permitted a defendant to move for a reduced sentence because of "extraordinary and compelling reasons"; previously, only the Director of the Bureau of Prisons could move for a sentence reduction. Black made use of that new opportunity and moved for a reduction of sentence, arguing that the combination of his cancer treatment and the COVID-19 pandemic constituted "extraordinary and compelling reasons" why he should be released early. *Black*, 999 F.3d at 1072.

This Court denied the motion, but the Seventh Circuit vacated and remanded. *Id.* In its decision, the Seventh Circuit discussed the other relevant provision of the First Step Act, the amendment to § 924(c)'s penalties. Under the amendment, a second § 924(c) conviction carries a 25-year minimum sentence only if it is committed after a prior § 924(c) conviction has become final. § 924(c)(1)(C). That is, if Black were sentenced today, he would face two 5-year mandatory minimum terms, not the 5- and 25-year terms that applied in 2007. The Seventh Circuit held that Black's sentence, relative to the current statutory scheme, could be relevant to a court considering a motion for a reduced sentence:

> As the Fourth Circuit explained in a similar case: "Not all defendants convicted under § 924(c) should receive new sentences, but courts should be empowered to relieve some defendants of those sentences on a case by case basis." Other circuits have agreed. We agree that such discretion is inherent in the compassionate release statute and process.

*Black*, 999 F.3d at 1075–76 (cleaned up). On remand, this Court noted that Black's cancer treatment had ended and he had been vaccinated against COVID-19, leaving

---

[4]     Black points out that the proper term is "reduction of sentence," not "compassionate release," because § 3582(c)(1)(A) "is not limited to cases involving terminal illness, advanced disability, or the like." [Dkt. 769 at 5 n.3.] The Seventh Circuit uses the term "compassionate release," so while the Court takes Black's point, it uses the two terms interchangeably.

only the disparity between his § 924(c) sentences and the new sentencing regime as a justification for reducing his sentence. [Dkt. 758 at 2.] An intervening Seventh Circuit decision, *United States v. Thacker*, 4 F.4th 569 (7th Cir. 2021), foreclosed that argument, so the Court denied Black's § 3582(c)(1)(A) motion. [Dkt. 758 at 1–2.]

*Thacker* was not the last word. The U.S. Sentencing Commission, the agency tasked with promulgating policy statements "describ[ing] what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples," 18 U.S.C. § 994(t), issued a policy statement amending U.S.S.G. § 1B1.13 to provide that a defendant serving an unusually long sentence relative to current law could, in some circumstances, show extraordinary and compelling reasons for a sentence reduction because of that disparity. The new version of § 1B1.13 took effect on November 1, 2023.

Black again moves for a reduction of sentence, arguing that the Sentencing Commission's new policy statement abrogates *Thacker* and permits the Court to find that the disparity between the sentence Black is serving on his § 924(c) convictions and the penalties he would be subject to today is an extraordinary and compelling reason that his sentence should be reduced. [Dkt. 769.] The government responds that *Thacker* bars the Court from finding that a nonretroactive sentencing amendment is a compelling and unusual reason to reduce a sentence, despite the Sentencing Commission's contrary policy statement. [Dkt. 774.]

## II.    Standard of Review

"A district court may grant a motion for a reduced sentence if (1) 'extraordinary and compelling reasons warrant such a reduction,' (2) the reduction is 'consistent with

4

applicable policy statements issued by the Sentencing Commission,' and (3) the reduction is appropriate in light of the [18 U.S.C. § 3553(a)] sentencing factors." *United States v. Williams*, 65 F.4th 343, 346 (7th Cir. 2023) (quoting 18 U.S.C. § 3582(c)(1)(A)); *cf. Thacker*, 4 F.4th at 576 (framing the analysis as having two steps, with *Williams*'s items (1) and (2) constituting step one).

## III. Analysis

Whether the Court has the power to find that Black presents extraordinary and compelling reasons that his sentence should be reduced raises questions of administrative law and statutory interpretation. The Court begins with the relevant statutory and Sentencing Guidelines provisions. It then analyzes how the Sentencing Commission's recent policy statement fits into the compassionate release framework and how much weight the Court must give to that policy statement. Finally, the Court explains why Seventh Circuit precedent precludes it from finding that the sentence Black is serving on his § 924(c) convictions is an extraordinary and compelling reason that his sentence should be reduced, despite the Commission's view that the Court can make that finding.

### A. Statutory and Sentencing Guidelines Provisions

#### 1. 18 U.S.C. § 924(c)

Black's convictions include two counts of carrying a firearm during and in relation to a crime of violence or drug trafficking crime in violation of 18 U.S.C. § 924(c). Section 924(c) convictions carry mandatory minimum penalties that must run consecutively to other sentences. At the time of Black's conviction, the first conviction mandated a 5-year sentence, and any subsequent conviction required a 25-

year sentence. *See Thacker*, 4 F.4th at 572. "The First Step Act changed that. An enhanced sentence for a second or subsequent conviction under § 924(c) now applies only when the first § 924(c) conviction arises from a separate case and becomes final before the second conviction." *Id.*; *see* § 924(c)(1)(C). The First Step Act did not, however, give this amendment to § 924(c) retroactive effect. *Thacker*, 4 F.4th at 573. Thus, while Black would be subject to only a 5-year mandatory minimum sentence on his second § 924(c) conviction if he were sentenced under the current version of the statute, the First Step Act does not, by its terms, entitle him to resentencing under the reduced penalties now in effect.

### 2.    18 U.S.C. § 3582(c)(1)(A)

Under the Sentencing Reform Act of 1984, Congress abolished federal parole, meaning that "when a defendant is sentenced to prison he generally must serve the great bulk of his assigned term." *United States v. Peoples*, 41 F.4th 837, 841 (7th Cir. 2022) (quoting *United States v. Haymond*, 139 S. Ct. 2369, 2382 (2019)). Instead of parole, the vehicle for early release of a federal prisoner is 18 U.S.C. § 3582(c)(1)(A). *See id.* Until 2018, only the Director of the Bureau of Prisons could seek to reduce a sentence pursuant to § 3582(c)(1)(A). *United States v. Gunn*, 980 F.3d 1178, 1179 (7th Cir. 2020). The First Step Act amended § 3582(c)(1)(A) to allow a defendant to request a reduced sentence and empowered courts to reduce a defendant's sentence after the Director is given 30 days to make a recommendation. *Id.* On such a motion, the court "may reduce the term of imprisonment …, after considering the factors set forth in [18 U.S.C. § 3553(a)] if it finds that … extraordinary and compelling reasons warrant

6

such a reduction" and "such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

In *Thacker*, the Seventh Circuit held that Congress's judgment not to make the amendment to § 924(c) retroactive meant that disparities in sentences between defendants sentenced under the old and new penalty schemes could not constitute or contribute to a finding of extraordinary and unusual reasons warranting early release. 4 F.4th at 576 ("[A] prisoner must identify an 'extraordinary and compelling' reason warranting a sentence reduction, but that reason cannot include, whether alone or in combination with other factors, consideration of the First Step Act's amendment to § 924(c)."). The Seventh Circuit reiterated this holding in subsequent opinions. *See, e.g.*, *United States v. Brock*, 39 F.4th 462, 465 (7th Cir. 2022); *United States v. King*, 40 F.4th 594, 595 (7th Cir. 2022); *cf. Williams*, 65 F.4th at 346–49 (surveying circuit disagreement but declining to revisit *Thacker*'s holding).

### 3. U.S.S.G. § 1B1.13

Congress directed the Sentencing Commission, in policy statements, to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 18 U.S.C. § 994(t). The Commission did so in U.S.S.G. § 1B1.13, but because only the Director could move for a reduction of sentence until 2018, the policy statement did not apply to a defendant's motion. *Gunn*, 980 F.3d at 1180 ("Section 1B1.13 addresses motions and determinations of the Director, not motions by prisoners. In other words, the Sentencing Commission has not yet issued a policy statement 'applicable' to [a defendant's] request."). The Commission later amended § 1B1.13 to account for the

fact that defendants can now move for reduced sentence pursuant to § 3582(c)(1)(A). When Congress did not act to prevent the amendment from becoming operative, the amended § 1B1.13 took effect on November 1, 2023.

In addition to providing a policy statement applicable to a defendant's motion for reduced sentence, the Commission added the following provisions to § 1B1.13:

(b) Extraordinary and Compelling Reasons.—Extraordinary and compelling reasons exist under any of the following circumstances or a combination thereof:

...

(6) Unusually Long Sentence.—If a defendant received an unusually long sentence and has served at least 10 years of the term of imprisonment, a change in the law (other than an amendment to the Guidelines Manual that has not been made retroactive) may be considered in determining whether the defendant presents an extraordinary and compelling reason, but only where such change would produce a gross disparity between the sentence being served and the sentence likely to be imposed at the time the motion is filed, and after full consideration of the defendant's individualized circumstances.

(c) Limitation on Changes in Law.—Except as provided in subsection (b)(6), a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) shall not be considered for purposes of determining whether an extraordinary and compelling reason exists under this policy statement. However, if a defendant otherwise establishes that extraordinary and compelling reasons warrant a sentence reduction under this policy statement, a change in the law (including an amendment to the Guidelines Manual that has not been made retroactive) may be considered for purposes of determining the extent of any such reduction.

The text of the amended § 1B1.13 could not be clearer: The Commission has rejected *Thacker*'s holding that nonretroactive sentencing amendments, including to § 924(c), cannot constitute or contribute to extraordinary and compelling reasons to reduce a defendant's sentence under § 3582(c)(1)(A). The Commission's commentary

8

accompanying its announcement of these revisions makes the point explicitly. *See* 85 Fed. Reg. 28254, 28258–59 (May 3, 2023) (noting the circuit split by citing cases including *King*, which applied the *Thacker* principle, and "agree[ing] with the circuits that authorize a district court to consider non-retroactive changes in the law as extraordinary and compelling circumstances warranting a sentence reduction").

There is no doubt that Black falls within the scope of the amended version of § 1B1.13(b)(6), which explains that courts can find that the disproportionate length of a sentence imposed under an old sentencing scheme is an extraordinary and compelling reason to reduce a defendant's sentence. [*Cf.* Dkt. 774 at 6–8.] The question for the Court is whether the Sentencing Commission's or the Seventh Circuit's interpretation of "extraordinary and unusual" prevails.

## B. Application

Determining whether the Sentencing Commission's view of extraordinary and unusual reasons abrogates the Seventh Circuit's opposing interpretation depends on whether *Thacker* was interpreting—or at least relying on—a guideline, or construing § 3582(c)(1)(A). If the former, then the Commission's view prevails. *See Braxton v. United States*, 500 U.S. 344, 348 (1991) ("The Guidelines are of course implemented by the courts, so in charging the Commission 'periodically to review and revise' the Guidelines, Congress necessarily contemplated that the Commission would periodically review the work of the courts, and would make whatever clarifying revisions to the Guidelines conflicting judicial decisions might suggest." (cleaned up)).

If the latter, then the Commission's interpretation still might win out, but it is not a foregone conclusion. Statutory interpretation by the Commission receives

*Chevron* deference, *see, e.g.*, *United States v. Santoyo*, 146 F.3d 519, 524–25 (7th Cir. 1998), including if a court has previously construed the statute contrary to how the agency interprets it, *see Nat'l Cable & Telecom. Ass'n v. Brand X Internet Servs.*, 545 U.S. 967, 982–83 (2005). But courts do not defer if the statute leaves no gap to fill or if the agency interprets the statute unreasonably. *Cook County v. Wolf*, 962 F.3d 208, 221 (7th Cir. 2020).[5]

### 1. Whether *Thacker* Interpreted the Guideline or the Statute

The first question is whether the *Thacker* line of cases held that a nonretroactive sentencing amendment cannot constitute an extraordinary and compelling reason for a sentence reduction based on the compassionate release statute or a provision of the Sentencing Guidelines Manual. Black argues that the Seventh Circuit hewed closely enough to the old version of U.S.S.G. § 1B1.13 that the Sentencing Commission's amendment displaces those decisions. [Dkt. 769 at 11.]

The key opinion in Black's view is *Gunn*. He reads that decision as follows:

> In [*Gunn*], the Seventh Circuit observed that section 1B1.13 applied only when the government initiated the request. Nonetheless, *Gunn* allowed that, for defense requests, the court could grant relief if it found an extraordinary and compelling reason. However, since this effort would not be directly rooted in the guidelines, the courts should sparingly exercise that discretion and hew closely to the guideline, even though it was not authoritative for defense requests. In practice, the courts were confined, at least in the Seventh Circuit, to cases in which the defendant had serious health problems that would be exacerbated by remaining in prison during the pandemic.

---

[5]     As Black notes, the Supreme Court is considering whether to overrule or revise the *Chevron* framework [Dkt. 776 at 4], but the *Chevron* line of cases remains binding on this Court unless and until the Supreme Court says otherwise. *Bosse v. Oklahoma*, 580 U.S. 1, 3 (2016) ("It is this Court's prerogative alone to overrule one of its precedents." (cleaned up)).

[*Id.* (footnote omitted).] He reads *Thacker* to support his interpretation of *Gunn*, arguing that when it distinguished "a change in section 924(c)" from "a defendant's health situation (a recognized basis in the 2018 version of section 1B1.13)," *Thacker* "restrained district courts from venturing much beyond the sentencing guideline in place at the time; but it said nothing about the Commission's power to revise the guideline and to declare what are extraordinary and compelling reasons, a charge placed by Congress on the Commission." [*Id.* at 12–13.] On Black's account, when the Commission amended § 1B1.13, it authoritatively resolved the circuit split against *Thacker*, meaning that "*Thacker* has no binding effect on this Court, just as if the Seventh Circuit itself had overruled *Thacker*." [Dkt. 776 at 2.]

The Court reads Seventh Circuit precedent differently. In its view, although *Gunn*, *Thacker*, and other compassionate release cases discussed the pre-amendment version of § 1B1.13, the only authority those decisions relied on was the statute, § 3582(c)(1)(A). In *Gunn*, the Seventh Circuit reviewed the denial of a motion for reduction of sentence filed by the defendant. It held that the old § 1B1.13 did not apply because it "addresse[d] motions and determinations of the Director, not motions by prisoners," so "the Sentencing Commission ha[d] not yet issued a policy statement 'applicable' to Gunn's request." 980 F.3d at 1180. In the absence of such a policy statement, *Gunn* continued, "the trailing paragraph of § 3582(c)(1)(A)[6] does not curtail a district judge's discretion. Any decision is 'consistent with' a nonexistent policy statement. 'Consistent with' differs from 'authorized by.'" *Id.* The Seventh

---

[6]     The trailing paragraph reads: "and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission." § 3582(c)(1)(A).

Circuit rejected the argument that not applying § 1B1.13 to motions by defendants would "creat[e] a sort of Wild West in court, with every district judge having an idiosyncratic release policy," because "[t]he statute itself sets the standard: only 'extraordinary and compelling reasons' justify the release of a prisoner who is outside the scope of § 3582(c)(1)(A)(ii)." *Id.* Thus, *Gunn* held that in the absence of applicable guidance from the Commission, the statute alone controls district courts' discretion.

True, as Black points out, *Gunn* made observations about the likely interaction between the inapplicable § 1B1.13 and district courts' rulings on compassionate release motions. [Dkt. 769 at 11; Dkt. 776 at 6.] *Gunn* noted that "[t]he substantive aspects of the Sentencing Commission's analysis in § 1B1.13 and its Application Notes provide a working definition of 'extraordinary and compelling reasons,'" and that "a judge who strikes off on a different path risks an appellate holding that judicial discretion has been abused. In this way the Commission's analysis can guide discretion without being conclusive." 980 F.3d at 1180. Further, the amended statute "gives the Director at least 30 days to articulate the Bureau of Prisons' decision and rationale," which might be help determine "whether some novel 'extraordinary and compelling reason' exists." *Id.* Thus, the Seventh Circuit "expect[ed] that district judges [would] give the Director's analysis substantial weight, even though under the First Step Act the Director's views are not controlling." *Id.* Black suggests that these passages of *Gunn* mean that the Seventh Circuit was telling district courts that they "should sparingly exercise that discretion and hew closely to [§ 1B1.13]." [Dkt. 769 at 11.] Further, he submits that *Gunn* "cautioned that district courts should not stray

too far from section 1B1.13" and indicated that "[i]f a court strays too far from section 1B1.13, it could be found to have abused its discretion." [Dkt. 776 at 6.]

This reading of *Gunn* is possible, but the Court does not think it is best because the opinion's context cuts in the opposite direction. The district court in *Gunn* had mistakenly concluded that its discretion was limited by § 1B1.13, and the Seventh Circuit remanded for the district court to exercise the proper scope of its discretion. In doing so, the Seventh Circuit attempted to reassure the government that its holding would not produce a Wild West environment because the inapplicable § 1B1.13 factors and the views of the Director could help guide district courts in interpreting the statutory phrase "extraordinary and compelling." 980 F.3d at 1180. Given the posture, these passages are best read as predicting that district judges would be unlikely to push the limits of their discretion in the face of contrary views of the Commission and the Director, and appellate review—while deferential—would act as a backstop against exercises of discretion that went too far. *Id.* But in all these statements—including hoping that the Commission would issue an applicable policy statement—*Gunn* was clear that what checks district courts' discretion is the statute alone. *Id.* at 1180–81 ("District judges must operate under the statutory criteria— 'extraordinary and compelling reasons'—subject to deferential appellate review.").

In any event, *Gunn*'s predictions about what district courts might do in future cases when faced with unknown facts and arguments are dicta, and "[n]o court … is obliged to treat dictum of another court … as binding precedent." *Green Plains Trade Grp., LLC v. Archer Daniels Midland Co.*, 90 F.4th 919, 928 n.9 (7th Cir. 2024)

13

(quotation omitted). *Gunn* did not grapple with the question of what role the Commission's guidance plays in determining the outer boundary of a district court's statutory discretion, so the Court will rely on the subsequent decisions that have engaged with the limits of statutory discretion over *Gunn*'s predictions. *Cf. TransUnion LLC v. Ramirez*, 594 U.S. 413, 424 (2021) ("[A] federal court may resolve only a real controversy with real impact on real persons." (cleaned up)).

*Black* confirmed that district courts' discretion to find extraordinary and compelling circumstances is "broader" than the factors enumerated in the old version of § 1B1.13. 999 F.3d at 1074 (citing *Gunn* for the proposition that a "district court's discretion may be guided, but is not curtailed, by U.S.S.G. § 1B1.13"). *Williams*'s three-step test—which separates the requirement that a defendant meet the statutory definition of "extraordinary and compelling reasons" and the requirement that the exercise of discretion be consistent with applicable Commission policy statements, 65 F.4th at 346—bolsters this understanding because when there is no applicable policy statement, only the statute governs, *see Gunn*, 980 F.3d at 1180 ("Any decision is 'consistent with' a nonexistent policy statement."). Finally, *Thacker* expressly noted that there was no applicable policy statement before construing the statutory language to prohibit the consideration of a nonretroactive statutory amendment. 4 F.4th at 573–74 ("[U]ntil the Sentencing Commission updates its policy statement to reflect prisoner-initiated compassionate release motions, district courts have broad discretion to determine what else may constitute 'extraordinary and compelling reasons' warranting a sentence reduction. But the discretionary

14

authority conferred by § 3582(c)(1)(A) only goes so far."), 576 (holding that an "extraordinary and compelling" reason "cannot include, whether alone or in combination, consideration of the First Step Act's amendment to § 924(c)").

Thus, although *Gunn*'s dicta suggested that district courts would, in practice, look to the pre-amendment version of U.S.S.G. § 1B1.13 to help decide whether a defendant presented extraordinary and compelling reasons for a sentence reduction, subsequent Seventh Circuit cases have interpreted the statutory language without regard to the content of that policy statement. Because these decisions did not depend on the Commission's policy statement, the amendment to § 1B1.13 does not by itself abrogate those decisions. Instead, the question is whether the Commission's statutory interpretation overrides the Seventh Circuit's; the Court turns to that question next.

### 2. Whether the Statute Is Ambiguous

An agency's interpretation of a statute can supersede a court's prior interpretation under the *Chevron* framework if the agency is tasked with interpreting that statute and Congress has left a gap for the agency to fill. *Brand X*, 545 U.S. at 982–83. Black argues that Congress has delegated the interpretation of "extraordinary and compelling reasons" in § 3582(c)(1)(A) to the Sentencing Commission and that the judiciary must defer to the Commission's interpretation of that phrase. [Dkt. 776 at 4–6; *see id.* at 7 ("*Thacker* did not hold that section 3582 is unambiguous and contains no gap for the Commission to fill.").] The Court agrees.

Congress directed the Commission to "describe what should be considered extraordinary and compelling reasons for sentence reduction, including the criteria to be applied and a list of specific examples." 18 U.S.C. § 994(t). Except specifying

that "[r]ehabilitation of the defendant alone shall not be considered an extraordinary and compelling reason," *id.*, "Congress has provided little statutory guidance," *Williams*, 65 F.4th at 346 (citation omitted). Black argues that the statutory term has "little discernible content" and is not otherwise defined in the U.S. Code [Dkt. 774 at 5], which supports finding that "extraordinary and compelling" is ambiguous. *City of Arlington v. F.C.C.*, 569 U.S. 290, 296 (2013) ("Congress knows to speak in plain terms when it wishes to circumscribe, and in capacious terms when it wishes to enlarge, agency discretion.").

The Court concludes that "extraordinary and compelling" is ambiguous, so the Seventh Circuit's interpretation of that term does not prevent the Commission from construing that term differently. *See Brand X*, 545 U.S. at 982 ("A court's prior judicial construction of a statute trumps an agency construction otherwise entitled to Chevron deference only if the prior court decision holds that its construction follows from the unambiguous terms of the statute and thus leaves no room for agency discretion."). Instead, at *Chevron* step two, the Court must ask whether the Commission's policy statement "is a 'reasonable interpretation' of the enacted text" of § 3582(c)(1)(A). *Mayo Found. for Med. Educ. & Rsch. v. United States*, 562 U.S. 44, 48 (quoting *Chevron U.S.A., Inc. v. Nat. Res. Def. Council*, 467 U.S. 837, 844 (1984)).

### 3. Whether the Commission's Interpretation Is Reasonable

There are several grounds upon which Court can find that an agency's interpretation of a statute unreasonable, including that "the agency's reading disregards the statutory context." *See Cook County*, 962 F.3d at 226–27 (citing *Michigan v. EPA*, 576 U.S. 743, 753–54 (2015)). [*See* Dkt. 774 at 10–13 (making a

similar argument).][7] Black argues that the *Thacker*'s reading of § 3582(c)(1)(A) is, at most, "one possible interpretation of the statutory language," so the Commission's construction controls at *Chevron* step two. [Dkt. 776 at 9.] The Court reads Seventh Circuit precedent to forbid interpreting § 3582(c)(1)(A) to permit a nonretroactive sentencing amendment to constitute or contribute to "extraordinary and compelling reasons" for a sentence reduction, so the Court is bound to reject Black's argument.

*Thacker* and its progeny interpreted § 3582(c)(1)(A) to preclude a district court from finding that the § 924(c) amendments constitute extraordinary and compelling circumstances warranting a sentencing reduction. The language of those decisions indicates that the Seventh Circuit would reject the Commission's policy statement as unreasonable to the extent it purports to allow such an amendment to constitute extraordinary and compelling reasons. *Thacker* explained that although district courts' discretion is broad, "the discretionary sentencing authority *conferred by § 3582(c)(1)(A)* does not permit" sentencing reductions "without a district court finding some independent 'extraordinary and compelling' reason" besides the amendment to § 924(c). 4 F.4th at 575 (emphasis added). It then reviewed the same circuit split the Sentencing Commission confronted and concluded that a retroactive sentencing amendment categorically cannot be an "extraordinary and compelling" reason for a sentencing reduction. *Id.* at 575–76.

---

[7]     Black phrases the inquiry, as *Chevron* did, as whether a policy statement is "arbitrary, capricious, or manifestly contrary to the statute." [Dkt. 776 at 3 (quoting *Chevron*, 467 U.S. at 843–44); *id.* at 9.] The Court takes this to be the same substantive standard as the Supreme Court applied in *Mayo Foundation* and the Seventh Circuit applied in *Cook County*.

Part of the Seventh Circuit's reasoning was that statutory amendments ordinarily apply only prospectively, so any disparities produced by the amendment to § 924(c) are not "extraordinary," and treating them as such would conflict with the sentencing framework Congress enacted. *Thacker* explained that § 3582(c)(1)(A)

> cannot be used to effect a sentencing reduction at odds with Congress's express determination … that the amendment to § 924(c)'s sentencing structure apply only prospectively. To conclude otherwise would allow a federal prisoner to invoke the more general § 3582(c) to upend the clear and precise limitation Congress imposed on the effective date of the … amendment to § 924(c). Put another way, there is nothing 'extraordinary' about leaving untouched the exact penalties that Congress prescribed and that a district court imposed for particular violations of a statute.

*Id.* at 574 (citations omitted)); *accord Brock*, 39 F.4th at 465 (reiterating these points). *King* described the holding of *Thacker* and *Brock* as, "When deciding whether 'extraordinary and compelling reasons' justify a prisoner's compassionate release, judges *must not rely* on non-retroactive statutory changes or new judicial decisions." 40 F.4th at 595 (emphasis added and citations omitted) (adding that "There's nothing 'extraordinary' about new statutes or caselaw …."). *Thacker* also explained that treating sentencing disparities based on nonretroactive amendments to statutes would open the door requests for reduced sentences "on the basis that the prescribed sentence is too long, rests on a misguided view of the purposes of sentencing, reflects an outdated legislative choice by Congress, and the like," but such rationales "cannot supply an extraordinary and compelling reason to reduce a lawful sentence" without "offend[ing] principles of separation of powers." 4 F.4th at 574.

The Seventh Circuit's emphatic repetition that nonretroactivity of sentencing amendments is ordinary, not extraordinary, leads the Court to conclude that it would

18

hold that U.S.S.G. § 1B1.13(b)(6) is an impermissible reading of the statutory text and context to the extent that it would treat the nonretroactive amendment to § 924(c) as an extraordinary and compelling reason to reduce a defendant's sentence. [*See* Dkt. 774 at 10–13 (arguing that *Thacker* considered and rejected "the exact question [Black] raises here" (citing 4 F.4th at 571)).]

Black's arguments to the contrary are unavailing. First, he contends that "the government merely proffers the same dictionary-definition approach used in *Thacker*, but rejected by the Commission," which is insufficient to establish that *Thacker* precludes the Commission's interpretation of the statute. [Dkt. 776 at 9 & n.5.] The Court notes that while the government discusses the ordinary meaning of "extraordinary" and cites a Sixth Circuit case that cited a dictionary definition [Dkt. 774 at 13–14], none of *Gunn*, *Black*, *Thacker*, *Brock*, *King*, or *Williams* discussed dictionary definitions. Instead, the Court takes Black to argue that the common meanings of "extraordinary" and "compelling" are not so clear that the Commission's interpretation of those terms necessarily conflicts with the statute. [Dkt. 776 at 9 (arguing that the Seventh Circuit's interpretation is just one possible reading of the statutory language).] This may be a reasonable argument, but the Court reads *Thacker* and its progeny to interpret § 3582(c)(1)(A)'s text and context to preclude nonretroactive statutory amendments from being "extraordinary and compelling" reasons, rather than picking one permissible meaning among several competing options. The Court is bound to apply that holding.

19

Second, he argues that there is no separation of powers problem because the Commission's reading of "extraordinary and compelling" does not entitle defendants like him to a reduced sentence that Congress did not authorize, but rather made "only some, not all, persons sentenced under the prior version of section 924(c) … eligible for a sentence reduction under section 1B1.13(b)." [Dkt. 776 at 10 (footnote omitted); *see also* Dkt. 769 at 16.] Again, this argument may be a persuasive reason to agree with the Commission's reading of § 3582(c)(1)(A), but this Court lacks the power to accept it. *Thacker* explained that granting *any* defendant a reduced sentence based on a nonretroactive sentencing amendment would violate the separation of powers because doing so would rest on an impermissible rationale. 4 F.4th at 574.

Black argues that "[t]hese two objections … mirror concerns voiced in *Thacker*. Yet in *Williams*, the Seventh Circuit acknowledged that the Commission can approve what *Thacker* seemingly condemned." [Dkt. 776 at 10 (citations omitted); *see* Dkt. 769 at 15 ("As the Seventh Circuit recently explained in *Williams*, 'the issue is teed up, and either the Commission or the Supreme Court (we hope) will address it soon.'" (cleaned up)).] The Court does not read *Williams* to undermine *Thacker*'s reasoning for several reasons. The quoted language is dicta, and *Williams* recounted *Thacker*'s holding and stated that it "s[aw] no reason to change [its] analysis at this time." 65 F.4th at 344–45. The fact that the Seventh Circuit mentioned the Commission's then-proposed amendment to § 1B1.13 does not signal how, if at all, that amendment would impact its precedent. *See id.* at 345 ("[T]his effort is still at an early stage—so early that we see no value in speculating on what such a change would mean.").

Nor does the fact that *Williams* suggested the Commission might weigh in on the circuit split change the Court's analysis. *Williams* pointedly took no position on the possible effect of the amendment. *Id.* It discussed the possibility that the Supreme Court, which undoubtedly has the power to overrule the Seventh Circuit on statutory interpretation questions, might take up the split. *Id.* at 348–49. And the defendant in *Williams* was serving a sentence that would be unconstitutional if imposed today, *id.* at 344; it is not impossible to imagine that serving a now-unconstitutional sentence could be considered "extraordinary and compelling," even if serving a disproportionately long sentence imposed under an earlier—but still constitutional—version of a statute cannot be. Finally, while *Williams* appeared to contemplate that the amendment to § 1B1.13 might cause the Seventh Circuit to change course, it did not indicate that it would be proper for district courts to stop following *Thacker*. *See id.* at 344 ("Williams wants *us* to reconsider [*Thacker*]. *We* decline the invitation for several reasons." (emphases added)); *cf. Haynes v. United States*, 873 F.3d 954, 955 (7th Cir. 2017) ("The Supreme Court has under advisement a case ... that may reveal whether [we] correctly applied [a Supreme Court case], but the district judge properly treated those decisions as controlling unless the Justices say otherwise.").

Similarly, the Seventh Circuit's recent opinion in *In re Thomas*, —F.4th—, 2024 WL 389246 (7th Cir. Feb. 2, 2024) (per curiam), does not signal a retreat from *Thacker*. *Thomas* clarified that a bar on filing papers "attacking" his conviction does not bar a prisoner from moving for compassionate release. *Id.* at *2. *Thomas* further suggested that there was a nonfrivolous argument that § 1B1.13(b)(6) gives district

courts discretion to grant compassionate release based on nonretroactive sentencing amendments. *Id.* The Court agrees that this argument is nonfrivolous—indeed, it might be a winner on appeal—but *Thomas* "express[ed] no opinion on that question," *id.*, so it does not change the landscape of existing Seventh Circuit caselaw.

Third, Black notes that courts in other circuits have held that § 1B1.13(b)(6) is consistent with the statutory term "extraordinary and compelling" and have reduced sentences on that basis. [Dkt. 777, 779.] But these decisions do not convince the Court that its analysis, which hinges on Seventh Circuit precedent, is mistaken. The cases from district courts in the Eleventh Circuit, *United States v. Padgett*, 06-cr-13 (N.D. Fla. Jan. 30, 2024), and *United States v. Smith*, 07-cr-48 (N.D. Fla. Feb. 2, 2024), are irrelevant to the Court's analysis because the Eleventh Circuit interpreted the pre-amendment version of § 1B1.13 to apply to motions filed by defendants. *See United States v. Bryant*, 999 F.3d 1243, 1252 (11th Cir. 2021) (noting that "several of our sister circuits have concluded that 1B1.13 is not an 'applicable policy statement' at all for defendant-filed motions" but concluding that "the commonsense reading of 'applicable policy statements' includes U.S.S.G § 1B1.13, no matter who files the motion" (cleaned up)). In other words, the Eleventh Circuit lacks caselaw that, like *Thacker*, interprets the statutory term "extraordinary and compelling," so a district court in the Eleventh Circuit applying § 1B1.13(b)(6) to reduce a defendant's sentence does not have to grapple with a *Thacker* analogue. Therefore, its reasoning for why the new policy statement is a valid exercise of the Commission's delegated power is not relevant to what this Court considers the dispositive question.

The decisions from courts in the Sixth and Eighth Circuits are more helpful to Black because those circuits, like the Seventh Circuit, interpreted "extraordinary and compelling reasons" in § 3582(c)(1)(A) not to include a nonretroactive sentencing amendment. *See United States v. McCall*, 56 F.4th 1048, 1055–56 (6th Cir. 2022) (en banc); *United States v. Crandall*, 25 F.4th 582, 585–86 (8th Cir. 2022). In *United States v. Capps*, 11-cr-108 (E.D. Mo. Jan. 31, 2024), the court held that § 1B1.13(b)(6) was a permissible interpretation of § 3582(c)(1)(A) despite *Crandall*, because the Commission has the first responsibility to determine what reasons are extraordinary and compelling, and the Commission limited when a nonretroactive statutory change could be deemed an extraordinary and compelling reason. [Dkt. 777 at 18–19.] *United States v. Smith*, 95-cr-66 (S.D. Ohio Feb. 2, 2024), reasoned similarly, relying in part on *Capps* to conclude that § 1B1.13(b)(6) was valid. [Dkt. 779 at 9–15.]

*Capps* and *Smith* demonstrate the strength of Black's arguments about the validity of § 1B1.13(b)(6), but decisions interpreting the law of other circuits do little to convince this Court that is has misconstrued Seventh Circuit precedent. There are distinctions between the caselaw *Capps* and *Smith* applied and the *Thacker* line of cases. *Capps* noted that § 1B1.13(b)(6) contains a "limiting principle" that prevents all defendants serving no-longer-applicable mandatory sentences from being eligible for compassionate release, which it took to be responsive to a concern raised by the Eighth Circuit. [Dkt. 777 at 18.] *See Crandall*, 25 F.4th at 585. And *Smith* read Sixth Circuit precedent to rest on courts' discretion to interpret § 3582(c)(1)(A) in the absence of guidance from the Commission and an express reservation of the question

23

of whether the Commission could interpret § 3582(c)(1)(A) differently than it had. [Dkt. 779 at 14–15.] *See McCall*, 56 F.4th at 1054 & n.3. Although Seventh Circuit precedent is similar to these circuits', it contains subtle differences from *Crandall*'s concern about the lack of a limiting principle, *see Thacker*, F.4th at 574 (indicating that if any defendant receives a reduced sentence based on impermissible rationales, it would offend the separation of powers), and unlike *McCall*, *Thacker* decided the statutory interpretation question with no indication that the Commission might be able to adopt a contrary reading of the statute, *see id.* at 573–74 (noting that district courts have broad statutory discretion in the absence of an applicable policy statement).[8] Therefore, *Capps* and *Smith* do not persuade the Court its reading of Seventh Circuit precedent is incorrect.[9]

Finally, Black argues that because Congress did not block the amendment to § 1B1.13 from taking effect, it "evidently saw no conflict between the amended guideline and the decision to make amended section 924(c) prospective." [Dkt. 769 at 16–17; *see also* Dkt. 774 at 10 n.6.] The government argues that congressional

---

[8]     As the Court has explained, *Williams* noted the proposed amendment to § 1B1.13 but expressly left *Thacker* in place and did not indicate whether the Commission could displace the Seventh Circuit's reading of the statute. 65 F.4th at 344–45.

[9]     The Court has focused on its interpretation of binding precedent, but other district courts in the Seventh Circuit have noted that "[t]he *Thacker* line of cases can be read to hold that the statutory definition of 'extraordinary' does not extend to law changes, which means there is a question about whether the Sentencing Commission exceeded its authority when it added this item to the list of potentially extraordinary and compelling reasons warranting a sentence reduction under § 3582(c)(1)(A)(i)." *United States v. Jackson*, 2023 WL 8086745, at *3 (S.D. Ind. Nov. 21, 2023) (Barker, J.) (citation omitted) (but ruling on other grounds)); *accord, e.g.*, *United States v. Sims*, 2023 WL 8188360, at *2–3 (S.D. Ind. Nov. 27, 2023) (Sweeney, J.); *United States v. Mediate*, 2023 WL 8188359, at *2–3 (S.D. Ind. Nov. 27, 2023) (Pratt, C.J.); *United States v. Shelton*, 2023 WL 8702263, at *3–4 (S.D. Ind. Dec. 15, 2023) (Magnus-Stinson, J.).

inaction does not imply support for the Commission's action. [Dkt. 774 at 21–23.] However persuasive this argument might be, it is properly directed to the Seventh Circuit, not this Court, which is bound by *Thacker* and its progeny. Black is welcome to ask the Seventh Circuit to overrule the *Thacker* line of cases, but the Court holds that it is bound to apply those precedents.

## IV. Conclusion

For the foregoing reasons, the Court concludes that the Seventh Circuit has interpreted 18 U.S.C. § 3582(c)(1)(A) to preclude a nonretroactive amendment to a statutory sentence from being considered an extraordinary and compelling reason to reduce a sentence. As the Seventh Circuit has construed that statute, the amended U.S.S.G. § 1B1.13(b)(6) is not a reasonable reading of § 3582(c)(1)(A). Thus, the Court cannot defer to the Commission's interpretation of the statute under *Chevron*. Instead, the Court must apply *Thacker* and its progeny and deny Black's motion for a reduced sentence. [Dkt. 769.] Because the Court denies his motion based on this threshold legal issue, it takes no position on whether it would find extraordinary and compelling circumstances if it had the discretion to do so or how it would weigh the 18 U.S.C. § 3553(a) factors.

Enter: 05-cr-70-4
Date: February 6, 2024

_____

Lindsay C. Jenkins
United States District Judge

25